MONICA Y. KIM (State Bar No. 180139)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile:  (310) 229-1244
Email:  MYK@LNBYB.COM; JSK@LNBYB.COM

Attorneys for Timothy J. Yoo
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BLUE GLOBAL, LLC<br><br>Debtor and Debtor in Possession. | Case No.: 2:17-BK-10900-ER<br><br>Chapter 7<br><br>**TRUSTEE'S OMNIBUS MOTION FOR ORDER APPROVING COMPROMISES OF CONTROVERSIES RELEVANT TO RECOVERY OF PREFERENTIAL TRANSFERS; MEMORANDUM OF POINTS AND AUTHORITIES THEREON; DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL INTERESTED PARTIES:**

Timothy J. Yoo, Chapter 7 Trustee (the "Trustee") for the Estate of Blue Global, LLC, the debtor herein (the "Debtor"), hereby moves this Court for an order approving compromises of controversies relevant to the recovery of preferential transfers (the "Motion").

The compromises that are the subject of this Motion will resolve the Trustee's claims against various transferees and/or defendants to avoid and recover preferences pursuant to 11

1

U.S.C. §§ 547 and 550 (the "Compromises").  The Compromises will resolve any outstanding controversies relevant to the transfers at issue.  By these Compromises, the Trustee will recover a total of $58,160.72 cash for the Estate, which will benefit the Estate and its creditors.

This Motion seeks approval of the Estate's claims against the defendants and/or transferees identified below:

| Defendant/Transferee | Amount at issue | Settlement amount |
|---|---|---|
| American Express Company, American Express Travel Related Services Company, Inc., American Express National Bank successor by merger to American Express Bank, FSB and formerly known as American Express Centurion Bank ("AMEX") | $58,850.70 | $6,250.00 |
| Daniel Balsam (individually and doing business as The Law Offices of Daniel Balsam), and Daniel Balsam's clients Nicole Avila, Matt Barrett, Christina Bowman-Jones, Heather Byrnes, Hoon Chung, Fenwick Crecy, William Greenberg, Dhoden Gyatso, Brenda Harris, James Jobe, Debra Kottong, Vanessa Powers, Sergio Santos, and Bunny Segal (the "Balsam Parties") | $34,881.00 | $17,440.50 |
| AdMediary, LLC ("AdMediary") | $34,791.69 | $4,470.22 |
| iDrive Interactive, LLC ("iDrive, and together with AMEX, the Balsam Parties, and AdMediary, the "Settling Parties") | $182,600.46 | $30,000.00 |
| **TOTAL** | **$311,123.85** | **$58,160.72** |

The terms and conditions of the Compromises are set forth in the Motion.  The Motion is based upon 11 U.S.C. §§ 105 and 323(a), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1(o) of the Local Bankruptcy Rules; the Memorandum of Points and Authorities and the Declaration of Timothy J. Yoo; the Notice of the Motion, which was concurrently filed with the Court and served upon all interested parties entitled to notice; all pleadings and records on file herein; and all matters which are subject to judicial notice.  This

1    Motion is made on the grounds that the Compromises are in the best interest of the Estate,

2    and are an exercise of the Trustee's reasonable business judgment.

3        **WHEREFORE**, the Trustee respectfully requests this Court enter an order:

4        1.       Approving the Compromises of controversies with the Settling Parties as

5    being in the best interest of the Estate and an exercise of the Trustee's reasonable business

6    judgment;

7        2.       Approving the form of each of the four (4) Settlement Agreements that the

8    Trustee has entered into with the Settling Parties;

9        3.       Determining that adequate notice of this Motion was provided to all interested

10   parties;

11       4.       Authorizing the Trustee to execute any and all documents necessary to

12   effectuate the Compromises that are the subject of this Motion; and

13       5.       Granting any and other further relief as may be just and proper.

14   DATED: April 9, 2019                  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

15

16                                         By:____ */s/ Jeffrey S. Kwong*_____
                                                 MONICA Y. KIM
17                                               JEFFREY S. KWONG
                                                 Attorneys for Timothy J. Yoo, Chapter 7
18                                               Trustee

19

20

21

22

23

24

25

26

27

28

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS, AND TERMS OF THE COMPROMISES**

A.    **General Background**

On January 25, 2017 ("<u>Petition Date</u>"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  Shortly thereafter, Timothy J. Yoo, Chapter 7 Trustee, being duly qualified, was appointed and presently is the acting Chapter 7 Trustee of the Debtor's bankruptcy estate (the "<u>Estate</u>").

B.    **Preference Claims Against AMEX, Balsam Parties, And AdMediary; And Adversary Proceeding Commenced Against iDrive**

As part of the Trustee's attempt to investigate and settle certain of the Estate's preference claims[1] prior to initiating adversary proceedings for recovery thereon, the Trustee, through counsel, sent settlement letters and correspondence ("<u>Settlement Correspondence</u>") to the transferees.  Through the Settlement Correspondence, the Trustee was able to settle the Estate's preference claims against AMEX, the Balsam Parties, and AdMediary without the need for filing adversary proceedings against these parties.

On January 24, 2019, the Trustee commenced an adversary proceeding against iDrive to, among other things, recover the preferential transfer payments under 11 U.S.C. §§ 547(b) and 550; and for disallowance of claim pursuant to 11 U.S.C. § 502(d).  Through subsequent settlement discussions, the Trustee was also able to settle the Estate's claims against iDrive.

D.    **Settlements with the Settling Parties**

The Trustee has reached settlements with the Settling Parties, the terms of which are memorialized in settlement agreements (the "<u>Settlement Agreements</u>, and individually, the "<u>Agreement</u>").  The following is a summary of the salient terms of the Settlement Agreements, and is not meant to be a comprehensive review of the provisions.  In the event of any

---

[1] These claims involve certain transfers by the Debtor to transferees during the ninety-day period preceding the Petition Date (the "<u>Preference Period</u>").

4

inconsistencies between the terms and provisions of the Settlement Agreements and the descriptions below, the provisions in the Settlement Agreements shall govern.

| Exhibit | Adv. No. | Defendant/ Transferee | Trustee's claimed damages | Settlement terms |
|---------|----------|-----------------------|---------------------------|------------------|
| 1 | N/A | AMEX | $58,850.70 | Among other things, payment in the amount of $6,250.00 in exchange for settlement of the Estate's preference claims against AMEX |
| 2 | N/A | Balsam Parties | $34,881.00 | Payment in the amount of $17,440.50 in exchange for settlement of the Estate's preference claims against the Balsam Parties |
| 3 | N/A | AdMediary | $34,791.69 | Payment in the amount of $4,470.22 in exchange for settlement of the Estate's preference claims against AdMediary |
| 4 | 19-1019-ER | iDrive | $182,600.46 | Payment in the amount of $30,000.00 in exchange for, among other things, dismissal of adversary proceeding against iDrive |

The Trustee and the Settling Parties each desire to resolve their respective controversies through these settlements and agree that litigation of the controversies would be costly and have an uncertain outcome.  The Compromises that are the subject of this Motion are based upon the Settling Parties' respective assertions and supporting documents indicating alleged valid defenses to the respective transfers and/or financial hardships.

By this Motion, the Trustee seeks the Court's approval of the compromises that he has reached with the Settling Parties (the "Compromises").  The Compromises will resolve any outstanding controversies related to the transfers at issue.  By these Compromises, the Trustee will recover a total of $58,160.72 cash for the Estate, which will benefit the Estate and its creditors.

/ / /

5

## II.

## **THIS COURT SHOULD APPROVE THE COMPROMISES BECAUSE THEY ARE FAIR AND EQUITABLE, AND IN THE BEST INTEREST OF THE ESTATE**

### A.     **Standards for Approval of Compromises of Claims.**

Inherent in the grant of jurisdiction to the District Court's overall civil proceedings arising under, arising in or related to cases under Title 11 is the Court's authority, under § 105(a) of the Bankruptcy Code, to enter orders approving compromises.   This power is expressly recognized in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which provides that a court may approve a compromise or settlement after notice is provided in Rule 2002 of the Federal Rules of Bankruptcy Procedure.   F.R.B.P. 2002(a)(3), 9019(a). Approval of the compromise is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (O).   See Druker v. Greene (In re Carla Leather, Inc.), 50 B.R. 764, 775 (S.D.N.Y. 1985). Lastly, Bankruptcy Code Section 323 authorizes the Trustee to compromise a controversy. 11 U.S.C. § 323(a).

The approval or rejection of a proposed compromise is within the discretion of the Court and is to be determined by the particular circumstance of each case.   See United States of America v. Alaska National Bank of the North (In re Walsh Construction, Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).   The burden of establishing the fairness of the compromise rests on the proponent.   The Trustee is required to demonstrate that legal evaluations have been made by counsel experienced in such matters and that sufficient investigation has been conducted to enable such counsel to make an informed decision.   See Feder v. Harrington, 58 F.R.D. 171, 174-75 (S.D.N.Y. 1972).   The Trustee satisfies his burden in this case.

In determining the acceptability of a proposed compromise, the following four factors should be considered:

(a)     The probability of success in the litigation;

(b)     The difficulties, if any, to be encountered in the matters of collections;

(c)     The complexity of the litigation; and the expense, inconvenience and delay necessarily attending it; and

6

(d) The paramount interest of the creditors and the proper deference to their reasonable views. See Martin v. Kane (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986); See also, Lambert v. Flight Transportation (Flight Transportation Corporation Securities Litigation), 730 F.2d 1128, 1135 (8th Cir.1984); cert. denied nom, Reavis & McGrath v. Antinore, 469 U.S. 1207, 105 S.Ct. 169, 84 L.Ed.2d 310 (1985).

Based upon evidence presented to it, this Court is not required to decide the questions of law and fact in dispute, but instead to canvas the issues to see whether the "settlement falls below the lowest point in a range of reasonableness." Anaconda-Ericsson Inc. (In re Teletronics Services, Inc.), 762 F.2d 185, 189 (2nd Cir. 1985), quoting, In re W.T. Grant Company, 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied sub nom, Cosoff v. Rodman, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

When applying the above standards, and "[i]n passing upon the proposed settlement, the Court must consider the principle that 'law favors compromise.'" In re Carson, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1994) (citations omitted).

**B.    Application of Criteria to the Facts of the Compromises.**

Application of the above-described standards to each of the Compromises before this Court demonstrates that the Trustee has established the reasonableness and fairness of the proposed Compromises with the Settling Parties, and that the Settlement Agreements with the Settling Parties should be approved.

1.    Compromise between the Trustee and AMEX

The Trustee believes that the Estate holds claims against AMEX for the avoidance and recovery of alleged preferential transfers in the aggregate amount of $58,850.70.  On the other hand, AMEX contends that the transfers were made to AMEX in the ordinary course of business and that there may have been some new value provided to the Debtor after AMEX's receipt of the alleged preferential transfers, and AMEX asserts these as defenses to their return. After taking into consideration AMEX's defenses, and after reviewing the documentary evidence provided, the Trustee exercised his business judgment and entered into the AMEX Agreement (which provided, among other things, for a settlement amount of $6,250.00 to settle

the Trustee's claims against AMEX), as litigation costs associated with any adversary proceeding filed against AMEX would easily have depleted any ultimate recovery by the Estate.

### a.      The probability of success in the litigation

Although an adversary proceeding was not commenced against AMEX, the Trustee believes that he would be successful in any avoidance action commenced against AMEX. However, the cost to commence and prosecute the action would significantly reduce the net amount recovered by the Estate.  Additionally, the outcome of litigation is not certain and is costly.  Therefore, there is no guarantee that the Estate would recover any money for the benefit of creditors through litigation against AMEX.

### b.      The difficulties in collection.

If the Trustee were to obtain a judgment against AMEX for damages in excess of the AMEX Settlement Amount, there is a risk that the Trustee would not be able to collect such judgment.

### c.      The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.

Any litigation of the Trustee's disputes with AMEX is certain to be costly and time-consuming, and would quickly deplete the Estate's resources with no guaranteed benefit to creditors of an amount in excess of the AMEX Agreement.  Accordingly, the AMEX Agreement avoids the expense and delay associated with litigation against AMEX, provides the Estate with immediate cash (which has already been paid to the Trustee), and is of direct benefit to creditors of the Estate.

### d.      The interests of creditors.

As noted above, the AMEX Settlement Agreement will result in the Estate's receipt of cash concurrently with its execution, without further litigation and the expense and delay associated therewith.  Under the circumstances, the Trustee believes that the benefit to the Estate is significant, and the interests of creditors are best served by the approval of the AMEX Settlement Agreement.

Based on the foregoing, the Trustee respectfully submits that the AMEX Agreement is in the best interests of the Estate, and requests that the Court approve the AMEX Agreement.

2.     Compromise between the Trustee and the Balsam Parties

The Trustee believes that the Estate holds claims against the Balsam Parties for the avoidance and recovery of alleged preferential transfers in the aggregate amount of $34,881.00. On the other hand, the Balsam Parties contend that the transfers were made in the ordinary course of business and that several of the alleged transferees did not receive payments from the Debtor during the Preference Period, and the Balsam Parties assert these as defenses to their return.  After taking into consideration the Balsam Parties' defenses, and after reviewing the documentary evidence provided, the Trustee exercised his business judgment and entered into the Balsam Parties Agreement (which provided, among other things, for a settlement amount of $17,440.50 to settle the Trustee's claims against the Balsam Parties), as litigation costs associated with any adversary proceeding filed against the Balsam Parties would easily have depleted any ultimate recovery by the Estate.

a.     The probability of success in the litigation

Although an adversary proceeding was not commenced against the Balsam Parties, the Trustee believes that he would be successful in any avoidance action commenced against the Balsam Parties.  However, the cost to commence and prosecute the action would significantly reduce the net amount recovered by the Estate.  Additionally, the outcome of litigation is not certain and is costly. Therefore, there is no guarantee that the Estate would recover any money for the benefit of creditors through litigation against the Balsam Parties.

b.     The difficulties in collection.

If the Trustee were to obtain a judgment against the Balsam Parties for damages in excess of the Balsam Parties Settlement Amount, there is certainly a risk that the Trustee would not be able to collect such judgment.

///

///

c.      The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.

Any litigation of the Trustee's disputes with the Balsam Parties is certain to be costly and time-consuming, and would quickly deplete the Estate's resources with no guaranteed benefit to creditors of an amount in excess of the Balsam Parties Agreement. Accordingly, the Balsam Parties Agreement avoids the expense and delay associated with litigation against the Balsam Parties, provides the Estate with immediate cash (which has already been paid to the Trustee), and is of direct benefit to creditors of the Estate.

d.      The interests of creditors.

As noted above, the Balsam Parties Settlement Agreement will result in the Estate's receipt of cash concurrently with its execution, without further litigation and the expense and delay associated therewith. Under the circumstances, the Trustee believes that the benefit to the Estate is significant, and the interests of creditors are best served by the approval of the Balsam Parties Settlement Agreement.

Based on the foregoing, the Trustee respectfully submits that the Balsam Parties Agreement is in the best interests of the Estate, and requests that the Court approve the Balsam Parties Agreement.

3.      Compromise between the Trustee and AdMediary

The Trustee believes that the Estate holds claims against AdMediary for the avoidance and recovery of alleged preferential transfers in the aggregate amount of $34,791.69. On the other hand, AdMediary contends that the transfers were made to AdMediary in the ordinary course of business, and AdMediary asserts this as a defense to their return. After taking into consideration AdMediary's defense, and after reviewing the documentary evidence provided, the Trustee exercised his business judgment and entered into the AdMediary Agreement (which provided, among other things, for a settlement amount of $4,470.22 to settle the Trustee's claims against AdMediary), as litigation costs associated with any adversary proceeding filed against AdMediary would easily have depleted any ultimate recovery by the Estate.

/ / /

a. <u>The probability of success in the litigation</u>

Although an adversary proceeding was not commenced against AdMediary, the Trustee believes that he would be successful in any avoidance action commenced against AdMediary. However, the cost to commence and prosecute the action would significantly reduce the net amount recovered by the Estate. Additionally, the outcome of litigation is not certain and is costly. Therefore, there is no guarantee that the Estate would recover any money for the benefit of creditors through litigation against AdMediary.

b. <u>The difficulties in collection.</u>

If the Trustee were to obtain a judgment against AdMediary for damages in excess of the AdMediary Settlement Amount, there is certainly a risk that the Trustee would not be able to collect such judgment.

c. <u>The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.</u>

Any litigation of the Trustee's disputes with AdMediary is certain to be costly and time-consuming, and would quickly deplete the Estate's resources with no guaranteed benefit to creditors of an amount in excess of the AdMediary Agreement. Accordingly, the AdMediary Agreement avoids the expense and delay associated with litigation against AdMediary, provides the Estate with immediate cash (which has already been paid to the Trustee), and is of direct benefit to creditors of the Estate.

d. <u>The interests of creditors.</u>

As noted above, the AdMediary Settlement Agreement will result in the Estate's receipt of cash concurrently with its execution, without further litigation and the expense and delay associated therewith. Under the circumstances, the Trustee believes that the benefit to the Estate is significant, and the interests of creditors are best served by the approval of the AdMediary Settlement Agreement.

Based on the foregoing, the Trustee respectfully submits that the AdMediary Agreement is in the best interests of the Estate, and requests that the Court approve the AdMediary Agreement.

11

4.    Compromise between the Trustee and iDrive

The complaint against iDrive is for recovery of preferential transfers in the aggregate amount of $182,600.46. However, iDrive contends, among other things, that the transfers were made to iDrive in the ordinary course of business and that there may have been some new value provided to the Debtor after iDrive's receipt of the alleged preferential transfers, and iDrive asserts these as defenses to their return. After taking into consideration iDrive's defenses, and after reviewing the documentary evidence provided, the Trustee exercised his business judgment and entered into the iDrive Agreement (which provided, among other things, for a settlement amount of $30,000 for dismissal of the adversary action), as litigation costs would easily have depleted any ultimate recovery by the Estate.

a.    The probability of success in the litigation

The Trustee believes that he would be able to prevail in an avoidance action against iDrive; however, the cost to the Estate to prosecute the adversary proceeding would significantly reduce the net amount recovered by the Estate. Additionally, the outcome of litigation is not certain and is costly. Therefore, there is no guarantee that the Estate would recover any money for the benefit of creditors in the litigation against iDrive.

b.    The difficulties in collection.

If the Trustee were to obtain a judgment against iDrive for damages in excess of the iDrive Settlement Amount, there is certainly a risk that the Trustee would not be able to collect such judgment.

c.    The complexity of the litigation involved and the expense, inconvenience and delay attendant to it.

Any litigation of the Trustee's disputes with iDrive is certain to be costly and time-consuming, and would quickly deplete the Estate's resources with no guaranteed benefit to creditors. The iDrive Agreement avoids the expense and delay associated with litigation against iDrive, provides the Estate with cash (which has already been paid to the Trustee), and is of direct benefit to creditors of the Estate.

/ / /

12

1         d.     <u>The interests of creditors</u>.

2       As noted above, the iDrive Agreement will result in the Estate's receipt of funds, without

3 further litigation, and the expense and delay associated therewith.  Under the circumstances, the

4 Trustee believes that the benefit to the Estate is significant, and the interests of creditors are best

5 served by the approval of the iDrive Agreement.

6       Based on the foregoing, the Trustee respectfully submits that the iDrive Agreement is in

7 the best interests of the Estate, and requests that the Court approve the iDrive Agreement.

8 **IV.**

9 <u>**CONCLUSION**</u>

10       Based upon the foregoing, the Trustee respectfully requests that the Court enter an order:

11       1.     Approving the Compromises of controversies with the Settling Parties as

12 being in the best interest of the Estate and an exercise of the Trustee's reasonable business

13 judgment;

14       2.     Approving the form of each of the four (4) Settlement Agreements that the

15 Trustee has entered into with the Settling Parties;

16       3.     Determining that adequate notice of this Motion was provided to all interested

17 parties;

18       4.     Authorizing the Trustee to execute any and all documents necessary to

19 effectuate the Compromises that are the subject of this Motion; and

20       5.     Granting any and other further relief as may be just and proper.

21

22 DATED: April 9, 2019           LEVENE, NEALE, BENDER, YOO & BRILL
L.L.P.

23

24                   By:   */s/ Jeffrey S. Kwong*   _
                       MONICA Y. KIM

25                        JEFFREY S. KWONG
                       Attorneys for Timothy J. Yoo, Chapter 7

26                        Trustee

27

28

13

## <u>DECLARATION OF TIMOTHY J. YOO</u>

I, Timothy J. Yoo, declare that:

1.      I am an attorney, duly licensed to practice before all of the Courts of the State of California and before this Court.  I am the duly appointed chapter 7 trustee (the "<u>Trustee</u>") in the above-captioned bankruptcy case (the "<u>Bankruptcy Case</u>").  The matters stated herein are within my personal knowledge or I have gained knowledge of them from the regular business records that I maintain as a chapter 7 trustee.

2.      I submit this declaration in support of the "*Trustee's Omnibus Motion For Order Approving Compromises Of Controversies Relevant To Recovery Of Preferential Transfers*" (the "<u>Motion</u>").  All capitalized but undefined terms herein shall have the same meanings ascribed to them in the Motion.

3.      As part of my efforts to investigate and settle certain of the Estate's preference claims prior to initiating adversary proceedings for recovery thereon, my bankruptcy counsel sent settlement letters and correspondence ("<u>Settlement Correspondence</u>") to the transferees. Through the Settlement Correspondence, among other things, I was able to settle the Estate's preference claims against AMEX, the Balsam Parties, and AdMediary without the need for filing adversary proceedings against these parties.

4.      On January 24, 2019, I commenced an adversary proceeding against iDrive to, among other things, recover the preferential transfer payments under 11 U.S.C. §§ 547(b) and 550; and for disallowance of claim pursuant to 11 U.S.C. § 502(d).  Through subsequent settlement discussions, I was also able to settle the Estate's claims against iDrive.

5.      The Compromises, which are the subject of the Motion, are based upon the Settling Parties' respective assertions and supporting documents indicating various alleged affirmative defenses to the respective transfers.

6.      By this Motion, I seek the Court's approval of the compromises that I have reached with the Settling Parties (the "<u>Compromises</u>").  The Compromises will resolve any outstanding controversies relative to the transfers at issue.  By these Compromises, I will

14

recover a total of $58,160.72 cash for the Estate, which will benefit the Estate and its creditors.

7.  I believe that litigation of the subject preference claims against the relevant Settling Parties would be time consuming and costly.  I believe that the compromises are reasonable and in the best interests of creditors of the Estate. The chart in the Motion summarizes the salient terms of the Compromises, and true and correct copies of the Settlement Agreements reached with the Settling Parties are attached hereto as separate exhibits.  See **Exhibits "1", "2", "3", and "4"**.

8.  While I am confident that the Estate has strong claims against the Settling Parties for alleged preferences, and for certain claims to be disallowed, they have proffered defenses that, if successful, could substantially reduce any recovery for the Estate. Furthermore, to successfully prosecute the Estate's claims, I believe that my general bankruptcy counsel will have to incur many more hours in attorney time.

9.  I have numerous years of experience as a chapter 7 trustee and am familiar with the litigation of preferences that are at the heart of the disputes with the Settling Parties. Based on my experience and advice of counsel, I believe that the Compromises are reasonable and in the best interests of the Estate and its creditors.

10.  Only after considering all of the foregoing, and after evaluating the claims against the Settling Parties, I made the decision that the Compromises with the Settling Parties were advisable, reasonable, and in the best interests of the Estate and should be approved by this Court.

11.  At my instruction, my counsel has given notice of the Motion to all known creditors and parties-in-interest in this bankruptcy case that are entitled, Federal Rules of Bankruptcy Procedure 9019(a) and 2002(a), and Local Bankruptcy Rule 9013-1(o).  I believe that the Notice constitutes adequate notice and opportunity for a hearing pursuant to 11 U.S.C. § 102.

/ / /

/ / /

15

1      I declare under penalty of perjury under the laws of the United States of America that

2 the foregoing is true and correct.

3      Executed this 8th day of April 2019, at Los Angeles, California.

4

5

6                                    TIMOTHY J. YOO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and between Timothy J. Yoo, solely in his capacity as the Chapter 7 trustee ("Trustee") and American Express Company, American Express Travel Related Services Company, Inc., American Express National Bank successor by merger to American Express Bank, FSB and formerly known as American Express Centurion Bank ("AMEX").

1.    RECITALS:  This Agreement is made with reference to the following facts:

a.    On January 25, 2017 (the "Petition Date"), Blue Global, LLC (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The case is pending before the United States Bankruptcy Court for the Central District of California ("Court") and is titled In re Blue Global, LLC, Case No. 2:17-bk-10900-ER (the "Bankruptcy Case").

b.    Thereafter, Timothy J. Yoo was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy case.

c.    The Trustee contended that transfers from the Debtor totaling $58,850.70 were made to AMEX prior to the Petition Date (the "Transfers"), which constitute preferential transfers avoidable under 11 U.S.C. § 547(b).

d.    AMEX asserts defenses to the avoidance and recovery of the Transfers, including contending that the Transfers were made in the ordinary course of business and that there may have been some new value provided to the Debtor after AMEX's receipt of the Transfers.

g.    It is the intention of the parties hereto to settle the estate's claims related to the Transfers, without any admission of liability by AMEX.

2.    PAYMENT

a.    AMEX shall pay to the Trustee the sum of $6,250 (the "Settlement Amount") to be delivered to the Trustee within thirty (30) days following the later to occur of (a) delivery to AMEX's counsel of an IRS Form W-9 completed by the payee of the Settlement Amount, as provided below; and (b) receipt by AMEX's counsel of the fully executed Agreement.  The Settlement Amount shall be paid by check payable to "Timothy J. Yoo, Trustee of Blue Global, LLC" and mailed to the following address:

Levene, Neale, Bender, Yoo & Brill L.L.P.
800 S. Figueroa Street, Suite 1260
Los Angeles, California 90017
Attention: Timothy J. Yoo, Esq

b.      If the Trustee receives the Settlement Amount prior to the Bankruptcy Court's approval of this settlement (see Section 3 below), the Trustee shall hold the Settlement Amount in trust pending the entry of a final approval order by the Bankruptcy Court or, if there is an appeal, until entry of a final order with respect to the appeal.  In the event that the Bankruptcy Court does not approve this Agreement or there is a final, non-appealable order of an appellate court reversing an order of the Bankruptcy Court approving this Agreement, the Trustee shall return the Settlement Amount to AMEX.

3.      APPROVAL BY THE COURT

The effectiveness of this Agreement is subject to the Court's approval by entry of an order authorizing this Agreement.  The Trustee shall file a motion for an order approving this Agreement with the Court.

4.      RELEASES

Subject to the terms and conditions of this Agreement, including Court approval of this Agreement as provided in Section 3 above, (a) the Trustee hereby releases AMEX from all claims that arise from, relate to, or could have been asserted in connection with the Transfers or that are otherwise related to the Debtor or the Bankruptcy Case, including without limitation any claims under Chapter 5 of the Bankruptcy Code or comparable state statutes; and, (b) AMEX, with the exception of any claims that AMEX has asserted or may assert in the Bankruptcy Case against the Debtor's estate (including proof of claim nos. 16 and 18), which the Trustee and the Debtor's estate reserve all rights and defenses to object to, hereby releases the Trustee and the Debtor's estate from all claims related to the Debtor or the Bankruptcy Case, provided, however, this release by AMEX does not extend to any contractual obligations (including charges on credit or charge cards) by any entity other than the Debtor.

5.      REPRESENTATIONS AND WARRANTIES

Each of the parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.      No party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any other party (or of any officer, agent, employee, representative, or attorney for the other party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

b.      Each party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

c.      Each party has read this Agreement and understands the contents hereof.

d.      Each party has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of by this Agreement.

e.      The parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

6.      <u>SETTLEMENT</u>

This Agreement affects the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by any party hereto of any liability of any kind to any other party. Each of the parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace.

7.      <u>MISCELLANEOUS</u>

a.      This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

b.      This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

c.      Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any party.

d.      Each party shall be responsible for, and may not seek reimbursement from its adverse party for, the costs, expenses, and attorneys' fees that it incurred in connection with the settlement and negotiation of this Agreement.

e.      The parties hereto agree that the United States Bankruptcy

Court for the Central District of California shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine any disputes that arise under or on account of this Agreement.

       f.     In the event of litigation relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees.

       g.    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart (including facsimile and electronic signatures) shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

This Agreement, consisting of 4 pages, is made and entered into on and as of February 13, 2019 in Los Angeles County, State of California.

TIMOTHY J. YOO
Chapter 7 Trustee

American Express Company

By:

Its: Chief Bankruptcy Counsel

American Express Travel Related Services Company, Inc.

By:

Its: Chief Bankruptcy Counsel

American Express National Bank successor by merger to American Express Bank, FSB and formerly known as American Express Centurion Bank

By:

Its: Chief Bankruptcy Counsel

# EXHIBIT "2"

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release (the "Agreement") is made by and between Timothy J. Yoo, solely in his capacity as the Chapter 7 trustee for Blue Global, LLC ("Trustee") and Daniel Balsam (individually and doing business as The Law Offices of Daniel Balsam), and Daniel Balsam's clients Nicole Avila, Matt Barrett, Christina Bowman-Jones, Heather Byrnes, Hoon Chung, Fenwick Crecy, William Greenberg, Dhoden Gyatso, Brenda Harris, James Jobe, Debra Kottong, Vanessa Powers, Sergio Santos, and Bunny Segal (the "Alleged Transferee," whether singular or plural).

1.    <u>RECITALS</u>:  This Agreement is made with reference to the following facts:

a.    On January 25, 2017 (the "Petition Date"), Blue Global, LLC (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The case is pending before the United States Bankruptcy Court for the Central District of California ("Court") and is titled <u>In re Blue Global, LLC.</u>, Case No. 2:17-bk-10900-ER.

b.    Thereafter, Timothy J. Yoo was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy case.

c.    The Trustee contended that transfers from the Debtor totaling $34,881.00 were made to the Alleged Transferee prior to the Petition Date (the "Transfers"), which constitute preferential transfers avoidable under 11 U.S.C. § 547(b).  The Alleged Transferee allege that they received the following payments from Debtor during the clawback period as follows: Avila - $0, Barrett - $2,652.00, Bowman-Jones - $1,509.00, Byrnes - $1,384.50, Chung - $1,489.50, Crecy - $0, Greenberg - $0, Gyatso - $0, Harris - $1,938.00, Jobe - $1,164.00, Kottong - $2,509.50, Powers - $1,491.00, Santos - $1,069.50, Segal - $2,233.50.

d.    The Alleged Transferee asserts defenses to the avoidance and recovery of the Transfers, including: a) contending that the Transfers were made in the ordinary course of business, and b) four of the Alleged Transferees (Crecy, Greenberg, Avila, and Gyatso) did not receive any monies from Debtor within the clawback period at all.

e.    It is the intention of the parties hereto to settle the estate's claims related to the Transfers, without any admission of liability by the Alleged Transferee.

2.    <u>PAYMENT</u>

a.    The Alleged Transferee shall pay to the Trustee the sum of $17,440.50 (the "Settlement Amount") no later than March 1, 2019.

1

b.      The Settlement Amount shall be paid by check payable to "Timothy J. Yoo, Chapter 7 Trustee" and mailed to the following address:

Levene, Neale, Bender, Yoo & Brill L.L.P.
800 S. Figueroa Street, Suite 1260
Los Angeles, California 90017
Attention: Timothy J. Yoo, Esq.

3.      <u>APPROVAL BY THE COURT</u>

The effectiveness of this Agreement is subject to the Court's approval by entry of an order authorizing this Agreement.  The Trustee shall file a motion for an order approving this Agreement with the Court.  In the event that the Court denies the Trustee's motion for an order approving this Agreement, the Trustee shall promptly return to the Alleged Transferee the Settlement Amount.

4.      <u>RELEASES</u>

Subject to the terms and conditions of this Agreement, including Court approval of this Agreement as provided in Section 3 above, (a) the Trustee hereby releases the Alleged Transferee from all claims that arise from, relate to, or could have been asserted in connection with the Transfers and, (b) the Alleged Transferee, with the exception of any claims that the Alleged Transferee may assert in the underlying bankruptcy case against the Debtor's estate, which the Trustee and the Debtor's estate reserves all rights and defenses to object to, the Alleged Transferee hereby releases the Trustee and the Debtor's estate from all claims.

5.      <u>REPRESENTATIONS AND WARRANTIES</u>

Each of the parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.      No party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any other party (or of any officer, agent, employee, representative, or attorney for the other party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

b.      Each party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

c.      Each party has read this Agreement and understands the contents hereof.

2

       d.     Each party has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of by this Agreement.

       e.     The parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

6.     <u>SETTLEMENT</u>

This Agreement affects the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by any party hereto of any liability of any kind to any other party.  Each of the parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace.

7.     <u>MISCELLANEOUS</u>

       a.     This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

       b.     Each person executing this Agreement represents that he has full and legal authority to execute this agreement for and on behalf of the respective party for which he or she is executing this Agreement and to bind that party.

       c.     This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions.  This Agreement may be amended only by an agreement in writing between the Parties or their attorneys.

       d.     Each party has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any party.

       e.     Each party shall be responsible for, and may not seek reimbursement from its adverse party for, the costs, expenses, and attorneys' fees that it incurred in connection with the settlement and negotiation of this Agreement.

       f.     The parties hereto agree that the United States Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine any disputes that arise under or on account of this Agreement.

g.      If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

h.      In the event of litigation relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees.

i.      This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart (including facsimile and electronic signatures) shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

This Agreement, consisting of 4 pages, is made and entered into on and as of February 5, 2019 in Los Angeles County, State of California.

TIMOTHY J. YOO, CHAPTER 7 TRUSTEE

TIMOTHY J. YOO
Chapter 7 Trustee


DANIEL BALSAM, individually and doing business as THE LAW OFFICES OF DANIEL BALSAM, on behalf of themselves and the following clients: NICOLE AVILA, MATT BARRETT, CHRISTINA BOWMAN-JONES, HEATHER BYRNES HOON CHUNG, FENWICK CRECY, WILLIAM GREENBERG, DHODEN GYATSO, BRENDA HARRIS, JAMES JOBE, DEBRA KOTTONG, VANESSA POWERS, SERGIO SANTOS, AND BUNNY SEGAL

By: _____
        DANIEL BALSAM

4

# EXHIBIT "3"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and between Timothy J. Yoo, solely in his capacity as the Chapter 7 trustee ("Trustee") and AdMediary, LLC ("AdMediary").

1.    RECITALS:  This Agreement is made with reference to the following facts:

a.    On January 25, 2017 (the "Petition Date"), Blue Global, LLC (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The case is pending before the United States Bankruptcy Court for the Central District of California ("Court") and is titled In re Blue Global, LLC., Case No. 2:17-bk-10900-ER.

b.    Thereafter, Timothy J. Yoo was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy case.

c.    The Trustee contended that transfers from the Debtor totaling $34,791.69 were made to AdMediary prior to the Petition Date (the "Transfers"), which constitute preferential transfers avoidable under 11 U.S.C. § 547(b).

d.    AdMediary asserts defenses to the avoidance and recovery of the Transfers, including contending that the Transfers were made in the ordinary course of business.

g.    It is the intention of the parties hereto to settle the estate's claims related to the Transfers, without any admission of liability by AdMediary.

2.    PAYMENT

a.    AdMediary shall pay to the Trustee the sum of $4,470.22 (the "Settlement Amount") concurrently with the execution of the Agreement, which shall take place no later than January 24, 2019.

b.    The Settlement Amount shall be paid by wire transfer, with wire instructions provided by Trustee's counsel.

3.    APPROVAL BY THE COURT

The effectiveness of this Agreement is subject to the Court's approval by entry of an order authorizing this Agreement. The Trustee shall file a motion for an order approving this Agreement with the Court. In the event that the Court denies the Trustee's motion for an order approving this Agreement, the Trustee shall promptly return to AdMediary the Settlement Amount.

/ / /

4.    RELEASES

Subject to the terms and conditions of this Agreement, including Court approval of this Agreement as provided in Section 3 above, (a) the Trustee hereby releases AdMediary from all claims that arise from, relate to, or could have been asserted in connection with the Transfers and, (b) AdMediary, with the exception of any claims that AdMediary may assert in the underlying bankruptcy case against the Debtor's estate, which the Trustee and the Debtor's estate reserves all rights and defenses to object to, AdMediary hereby releases the Trustee and the Debtor's estate from all claims.

5.    REPRESENTATIONS AND WARRANTIES

Each of the parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.    No party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any other party (or of any officer, agent, employee, representative, or attorney for the other party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

b.    Each party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

c.    Each party has read this Agreement and understands the contents hereof.

d.    Each party has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of by this Agreement.

e.    The parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

6.    SETTLEMENT

This Agreement affects the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by any party hereto of any liability of any kind to any other party.  Each of the parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace.

2

7.    <u>MISCELLANEOUS</u>

a.    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

b.    This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing.

c.    Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any party.

d.    Each party shall be responsible for, and may not seek reimbursement from its adverse party for, the costs, expenses, and attorneys' fees that it incurred in connection with the settlement and negotiation of this Agreement.

e.    The parties hereto agree that the United States Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine any disputes that arise under or on account of this Agreement.

f.    If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

g.    In the event of litigation relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees.

h.    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart (including facsimile and electronic signatures) shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

This Agreement, consisting of 3 pages, is made and entered into on and as of January <u>24</u>, 2019 in Los Angeles County, State of California.

_____
TIMOTHY J. YOO

3

Chapter 7 Trustee


ADMEDIARY, LLC

By: _____
        Martha Leon
Its: CFO_____

This Agreement, consisting of 4 pages, is made and entered into on and as of January 23, 2019 in Los Angeles County, State of California.

_____
TIMOTHY J. YOO
Chapter 7 Trustee


ADMEDIARY, LLC

By: _____
       Martha Leon
   Its: CFO

4

This Agreement, consisting of 4 pages, is made and entered into on and as of January 23, 2019 in Los Angeles County, State of California.

_____
TIMOTHY J. YOO
Chapter 7 Trustee


ADMEDIARY, LLC

By: _____
    Martha Leon
  Its: _CFO_____

4

# EXHIBIT "4"

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and between Timothy J. Yoo, solely in his capacity as the Chapter 7 trustee ("Trustee") and iDrive Interactive, LLC ("iDrive").

1.     RECITALS:  This Agreement is made with reference to the following facts:

a.     On January 25, 2017 (the "Petition Date"), Blue Global, LLC (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The case is pending before the United States Bankruptcy Court for the Central District of California ("Court") and is titled In re Blue Global, LLC., Case No. 2:17-bk-10900-ER.

b.     Thereafter, Timothy J. Yoo was duly appointed as the Chapter 7 Trustee for the Debtor's bankruptcy case.

c.     The Trustee contended that transfers from the Debtor totaling $182,600.46 were made to iDrive prior to the Petition Date (the "Transfers"), which constitute preferential transfers avoidable under 11 U.S.C. § 547(b).

d.     iDrive asserts defenses to the avoidance and recovery of the Transfers, including contending that the Transfers were made in the ordinary course of business and that there may have been some new value provided to the Debtor after iDrive's receipt of the Transfers.

g.     It is the intention of the parties hereto to settle the estate's claims related to the Transfers, without any admission of liability by iDrive.

2.     PAYMENT

a.     iDrive shall pay to the Trustee the sum of $30,000.00 (the "Settlement Amount") concurrently with the execution of the Agreement, which shall take place no later than April 5, 2019.

b.     The Settlement Amount shall be paid by wire transfer, with wire instructions provided by Trustee's counsel.

3.     APPROVAL BY THE COURT

The effectiveness of this Agreement is subject to the Court's approval by entry of an order authorizing this Agreement.  The Trustee shall file a motion for an order approving this Agreement with the Court.  In the event that the Court denies the Trustee's motion for an order approving this Agreement, the Trustee shall promptly return to iDrive the Settlement Amount.

4.   RELEASES

Subject to the terms and conditions of this Agreement, including Court approval of this Agreement as provided in Section 3 above, (a) the Trustee hereby releases iDrive from all claims that arise from, relate to, or could have been asserted in connection with the Transfers and, (b) iDrive, with the exception of any claims that iDrive may assert in the underlying bankruptcy case against the Debtor's estate, which the Trustee and the Debtor's estate reserves all rights and defenses to object to, iDrive hereby releases the Trustee and the Debtor's estate from all claims.

5.   REPRESENTATIONS AND WARRANTIES

Each of the parties to this Agreement represents, warrants, and agrees as to itself as follows:

a.   No party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any other party (or of any officer, agent, employee, representative, or attorney for the other party), in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

b.   Each party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

c.   Each party has read this Agreement and understands the contents hereof.

d.   Each party has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of by this Agreement.

e.   The parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement.

6.   SETTLEMENT

This Agreement affects the settlement of claims which are denied and contested and nothing contained herein shall be construed as an admission by any party hereto of any liability of any kind to any other party. Each of the parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace.

2

7.    <u>MISCELLANEOUS</u>

a.    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

b.    This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions.  This Agreement may be amended only by an agreement in writing.

c.    Each party has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any party.

d.    Each party shall be responsible for, and may not seek reimbursement from its adverse party for, the costs, expenses, and attorneys' fees that it incurred in connection with the settlement and negotiation of this Agreement.

e.    The parties hereto agree that the United States Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine any disputes that arise under or on account of this Agreement.

f.    If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

g.    In the event of litigation relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3

h.      This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart (including facsimile and electronic signatures) shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

This Agreement, consisting of 4 pages, is made and entered into on and as of April ___, 2019 in Los Angeles County, State of California.

_____
TIMOTHY J. YOO
Chapter 7 Trustee


IDRIVE INTERACTIVE, LLC

By: _____

Its: _Greg Bernstein_, Partner

4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **TRUSTEE'S OMNIBUS MOTION FOR ORDER APPROVING COMPROMISES OF CONTROVERSIES RELEVANT TO RECOVERY OF PREFERENTIAL TRANSFERS; MEMORANDUM OF POINTS AND AUTHORITIES THEREON; DECLARATION OF TIMOTHY J. YOO IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 9, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Andrew K Alper    aalper@frandzel.com, rsantamaria@frandzel.com
- Katalina Baumann    katalina.baumann@akerman.com, evelyn.duarte@akerman.com
- Sanaz S Bereliani    berelianilaw@gmail.com, chris@berelianilaw.com;r48595@notify.bestcase.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Michael B Brown    michael.brown@stoel.com, docketclerk@stoel.com;dawn.forgeur@stoel.com
- Thomas H Casey    kdriggers@tomcaseylaw.com, msilva@tomcaseylaw.com
- Ronald Clifford    rclifford@blakeleyllp.com, ecf@blakeleyllp.com;seb@blakeleyllp.com;info@ecf.inforuptcy.com
- Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- John Du Wors    ecf@newmanlaw.com, john@newmanlaw.com;keith@newmanlaw.com
- Barry S Glaser    bglaser@swesq.com, erhee@swesq.com
- Jeffrey J Hagen    jeff@hagenhagenlaw.com
- Allan H Ickowitz    aickowitz@nossaman.com, mwiman@nossaman.com
- Monica Y Kim    myk@lnbrb.com, myk@ecf.inforuptcy.com
- Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- Scott Lee    slee@lbbslaw.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Scott A Schiff    sas@soukup-schiff.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Timothy Yoo (TR)    tjytrustee@lnbyb.com, tjy@trustesolutions.net
- Sarah de Diego    sarah@dediegolaw.net, sarahc@dediego.law

**2. SERVED BY UNITED STATES MAIL**: On April 9, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 9, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

**SERVED BY PERSONAL DELIVERY**
Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 9, 2019 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

File No. 8113
9019 Motion Service List

Counsel for AMEX
Maureen P. McAneny
Arnall Golden Gregory LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363

Counsel for iDrive
Michael A. Henry
Gross McGinley, LLP
33 S. Seventh Street, P.O. Box 4060
Allentown, PA 18105

iDrive
iDrive Interactive, LLC
Attn: Officer, Managing or General Agent,
or Other Authorized Agent
for Service of Process
3909 Hartzdale Drive Suite 907
Camp Hill, PA 17011

AdMediary
AdMediary, LLC,
c/o Martha O. Leon, CFO
25876 The Old Road #227
Stevenson Ranch, CA 91381-1711

Balsam Parties
Daniel L. Balsam
THE LAW OFFICES OF DANIEL
BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501